IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 4:02-cr-00992-JFA |
| **BRANDON LEON BASHAM** | ) | |
| | ) | |
| | ) | |

## Government's Response in Opposition to Motion for Compassionate Release

Prisoner Brandon Basham was sentenced to death. ECF No. 805 at 11. Before he was executed, however, President Biden commuted his sentence to "life imprisonment without the possibility of parole." ECF No. 1760. Basham now asks the Court to reduce his presidentially commuted sentence. ECF No. 1765. He argues there are "extraordinary and compelling reasons" to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

The government strongly opposes any reduction in sentence. The motion fails at the start because Basham neglected to satisfy § 3582(c)(1)(A)'s "exhaustion requirement." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *see* ECF No. 1765 at 3 (acknowledging that he didn't submit a request for compassionate release to his warden). In any event, there are no extraordinary and compelling reasons to reduce his sentence. And even if there were, the Court should still deny the motion. Basham remains a danger to the community and the 18 U.S.C. § 3553(a) sentencing factors heavily weigh against a sentence reduction. Plus, he already received clemency from the jury's sentence. And

separation-of-powers principles discourage judicial modification of a presidentially commuted sentence. Therefore, the Court should deny the motion.

## BACKGROUND

### I. Factual background

Basham, together with his co-defendant Chadrick Fulks, "unleased a criminal rampage that lasted seventeen days and zigzagged across several states."[1] *Fulks*, 120 F.4th at 150. The duo, after escaping from a Kentucky jail, carjacked a "man at knifepoint and tied him to a tree." *Id.* They then drove the stolen car to Indiana, "where they stole several firearms and blank checks from a local residence." *Id.* From there, they made their way to West Virginia where their "conduct took a horrific turn": They carjacked, raped, and killed nineteen-year-old Samantha Burns. *Id.* After raping her, Basham kept "Burns's heart-shaped ring as a keepsake." *Id.*

Next was South Carolina where the duo "broke into cars to steal wallets and purses, used more drugs, burglarized a home to steal more firearms, fired their guns at a man who discovered them there, and stole a pickup truck." *Id.* They then carjacked and kidnapped forty-four-year-old mother and grandmother Alice Donovan at gunpoint. After kidnapping

---

[1] The government appreciates that the Court is very familiar with the facts of this case. These facts have been recounted several times by the Fourth Circuit. *See United States v. Fulks*, 120 F.4th 146, 150–52 (4th Cir. 2024); *United States v. Basham*, 789 F.3d 358, 362–67 (4th Cir. 2015); *United States v. Basham*, 561 F.3d 302, 309–314 (4th Cir. 2009).

The facts are "brutal." *Fulks*, 120 F.4th at 151. But they are also relevant. *See* § 3582(c)(1)(A) (requiring a court to consider the § 3553(a) sentencing factors). So the government recounts them, in short detail, once more.

her, they took Donovan to a cemetery where "Basham and Fulks took turns raping Donovan in the back seat of the car." *Id.* Basham then strangled her to death. *Id.*

Finally, the duo headed back to West Virginia. "Basham attempted to carjack yet another woman by pointing a gun at her fifteen-year-old daughter." *Id.* But he abandoned the effort when he discovered the daughter was talking on her cell phone. And he fled the scene when a law-enforcement officer arrived. While being chased by the officer, "Basham drew his weapon and fired a shot in the air" and then "drew his weapon a second time, turned, and fired" at the officer. *Basham*, 561 F.3d at 312. When law enforcement surrounded the area, however, Basham surrendered. *Id.*

Basham was charged with eight counts: (1) carjacking resulting in death, in violation of 18 U.S.C. § 2119(3); kidnapping resulting in death, in violation of 18 U.S.C. § 1201; interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2312; conspiracy to commit carjacking, kidnapping, interstate transportation of a stolen vehicle, felon in possession of a firearm, and possession of stolen firearms, in violation of 18 U.S.C. § 371; conspiracy to use, carry, and possess firearms during and in relation to, and in furtherance of, crimes of violence, in violation of 18 U.S.C. § 924(o); using, carrying, and possessing firearms during and in relation to, and in furtherance of, crimes of violence, in violation of 18 U.S.C. § 924(c); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g); and possession of stolen firearms, in violation of 18 U.S.C. § 922(j).

A jury convicted him of all eight counts. ECF No. 766. The jury rendered separate verdicts of death on the carjacking and kidnapping convictions. ECF Nos. 805, 806. The Court imposed concurrent sentences of death on those counts and a consecutive 660

months' imprisonment for the other six counts. ECF No. 886. The Fourth Circuit affirmed Basham's convictions and sentence. ECF No. 1162. The Court denied Basham's first motion to vacate his sentence under 28 U.S.C. § 2255, ECF No. 1577, and the Fourth Circuit affirmed, ECF No. 1606. The Court denied Basham's second motion to vacate his sentence under § 2255, ECF No. 1741, and the Fourth Circuit affirmed, ECF No. 1756. President Biden commuted Basham's death sentence to "life imprisonment without the possibility of parole." ECF No. 1760.

Basham has now moved to reduce his sentence. ECF No. 1765.

## II. Legal framework

Typically, a criminal sentence is final and a court "may not modify a term of imprisonment once it has been imposed." § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824 (2010). But there are exceptions; relevant here, § 3582(c)(1)(A)(i) authorizes a court to reduce a sentence if the court finds "extraordinary and compelling reasons [that] warrant such a reduction." § 3582(c)(1)(A)(i). Reductions for extraordinary and compelling reasons—together with sentence reductions for certain elderly inmates under § 3582(c)(1)(A)(ii)—are commonly referred to as "compassionate release."

A motion for compassionate release can be filed by the Director of the Bureau of Prisons on a prisoner's behalf. *See* § 3582(c)(1)(A). Or it can be filed by the prisoner himself. But for a prisoner to file it for himself, he must first satisfy § 3582(c)(1)(A)'s "exhaustion requirement." *Muhammad*, 16 F.4th at 129. To satisfy this threshold requirement, a prisoner must either (1) "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisoner to bring a motion on [his] behalf" or (2) wait 30 days

"from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A). After satisfying the exhaustion requirement, a prisoner "may file a motion with the court." *Muhammad*, 16 F.4th at 130.

A court may grant compassionate release only (1) if the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission" and (2) "after considering" the § 3553(a) factors. *See* § 3582(c)(1)(A). The applicable policy statement is found in United States Sentencing Guideline § 1B1.13.[2] It requires that the prisoner not be a "danger to the safety of any other person or to the community." § 1B1.13(a)(2); *see United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021) (noting that although the "dangerousness finding is not statutorily required," it "is part of the Sentencing Commission's policy statement"). And it "describes what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *See* 28 U.S.C. § 994(t).

The policy statement lists six categories of circumstances that can constitute extraordinary and compelling reasons. The six categories deal with a prisoner's medical circumstances, age, and family circumstances, whether the prisoner has been a victim of

[2] The Fourth Circuit previously held that § 1B1.13 was not an "applicable policy statement" to prisoner-filed motions for compassionate release. *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020). *McCoy* reasoned that § 1B1.13 was not an "applicable policy statement" because § 1B1.13 referenced motions only from the Director of the BOP, not prisoners themselves. But after amendments to the Sentencing Guidelines, § 1B1.13 now clearly references prisoner-filed motions. *See* § 1B1.13(a) (applying to motions made by "the Director of the Bureau of Prisons *or the defendant*" (emphasis added)). So notwithstanding *McCoy*, § 1B1.13 is as an "applicable policy statement" for prisoner-filed motions.

abuse while incarcerated, and a catch-all provision for circumstances that are "similar in gravity," as well as changes in the law that "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *See* § 1B1.13(b)(1)–(6).

## ARGUMENT

### I. Basham failed to satisfy § 3582(c)(1)(A)'s exhaustion requirement.

A prisoner must satisfy § 3582(c)(1)(A)'s "exhaustion requirement" before asking a court to reduce his sentence. *Muhammad*, 16 F.4th at 129. To satisfy this exhaustion requirement, a prisoner has two options: (1) "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisoner to bring a motion on [his] behalf" or (2) wait 30 days "from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A); *see Muhammad*, 16 F.4th at 130–31.

Basham did neither. The BOP has no record of Basham's submitting a request for compassionate release to his warden. And Basham confirms that he never submitted such a request. In his motion, he acknowledges that he "did not submit a request for compassionate release to the warden." ECF No. 1765 at 3. By failing to submit a request, he thus failed to either (1) "fully exhaust[ ] all administrative rights to appeal" the BOP's failure to move on his behalf or (2) wait 30 days after submitting the request. § 3582(c)(1)(A). So he, therefore, did not satisfy § 3582(c)(1)(A)'s exhaustion requirement.

Basham attempts to explain his failure. He says that he "[r]equested papers to file" but they were "never brought to [him]." ECF No. 1765 at 3. And he claims there was "no

way to file to the warden." *Id.* But § 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule. *See Muhammad*, 16 F.4th at 130. And there are no equitable exceptions to mandatory claims-processing rules. *Cf. United States v. Marsh*, 944 F.3d 524, 530 (4th Cir. 2019) (noting that "claim-processing rules in the 'mandatory camp' are 'not susceptible to equitable approaches'" (quoting *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019) (cleaned up))). Therefore, even assuming that Basham's purported explanations are true, they cannot excuse his failure.

Instead, a claim-processing rule must be enforced when properly raised. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 (2017). Here, the government properly raises § 3582(c)(1)(A)'s exhaustion requirement, so it must be enforced. To enforce the rule, Basham's motion should be denied without prejudice. *See United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020) (explaining the proper outcome when a prisoner fails to exhaust before moving for compassionate release).

## II. Basham has no extraordinary and compelling reasons.

### a. Basham's medical circumstances are not extraordinary and compelling reasons.

Basham claims to suffer from several medical issues. He claims to have "brain trauma" from when he fell out of a tree as a child, *see* ECF No. 1775 at 3, and ADHD and depression, *see* ECF No. 1765-2 at 9. But he fails to carry his burden to show these medical conditions create extraordinary and compelling reasons to reduce his sentence. *See United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *see, e.g.*, *United States v. Tucker*, No. CR 3:09-502-JFA, 2021 WL 3886416, at *2 (D.S.C. Aug. 31, 2021). Basham's medical

records confirm that he does suffer from some medical issues. He did "fall from a tree at 4-5 years of age causing head trauma." *See* Exhibit 3 at 282. And he has been diagnosed with ADHD and depression. *See id.* at 248.[3] His medical records show, however, that he "appears to have good physical condition and stable mental health." *Cf.* Exhibit 2 at 4. And that he receives ample medical treatment. *See id.* (noting that Basham "has maintained routine medical care by addressing medical issues during sick call and meeting scheduled medical call-outs").

Section 1B1.13(b)(1) lists four medical circumstances that can constitute extraordinary and compelling reasons. First, extraordinary and compelling reasons exist if the prisoner is suffering from a "terminal illness." *See* § 1B1.13(b)(1)(A). Yet none of Basham's medical conditions is a "terminal illness" because none has "an end-of-life trajectory." § 3582(d)(1); *see Terminal Illness*, Black's Law Dictionary (2nd ed.) ("an incurable illness that will end in a person's death").

Second, extraordinary and compelling reasons exist if the prisoner is suffering from "a serious physical or medical condition," or "a serious functional or cognitive impairment," that "substantially diminishes" his ability "to provide self-care within the

---

[3] In fact, these conditions were disclosed at sentencing. *See* Presentence Report ¶¶ 137–142. Therefore, they may be precluded from establishing extraordinary and compelling reasons. *See Fernandez v. United States*, 146 S. Ct. 1292, 1307 (2026) (Sotomayor, J., concurring in the judgment) ("A motion for compassionate release cannot justify a reduced sentence if it relies solely on facts a court already considered in imposing the initial sentence, rather than any changed circumstances that developed after sentencing."); *but see* § 1B1.13(e). In any event, even if medical conditions already known at sentencing could somehow create extraordinary and compelling reasons years later, Basham's don't.

environment of a correctional facility." § 1B1.13(b)(1)(B). In his motion, Basham claims that he "require[s] assistance with self-care such as bathing, walking, toileting." ECF No. 1765-2. In particular, he says that it is "hard to walk due to shaking and balance from Frontal Lob[e] Damage." *Id.*

His medical records tell a different story. They show Basham has a "normal steady gait." Exhibit 3 at 146; *see id.* at 226 ("Inmate ambulates, gait steady, appears well."); *see also id.* at 243, 253, 298, 311. In fact, as recently as February 2026, his medical records describe him as having a normal gait. *See id.* at 5. Further medical records show that he is not placed on any physical or work restrictions. *See id.* at 51. And that he "[s]howers and goes to outdoor recreation, at his discretion, per unit schedule." *Id.* at 226; *see id.* at 116 (noting that Basham "attend[s] to personal hygiene" and "participates in . . . outdoor rec"). The medical records explicitly describe him as able to accomplish daily tasks, *see id.* at 820, and to "provide[ ] all self-care." *Id.* at 298; *see id.* at 59 ("Summary of Cares: self-care"). Accordingly, Basham has not established that he is suffering from a condition that "substantially diminishes" his ability "to provide self-care within the environment of a correctional facility." § 1B1.13(b)(1)(B).

Third, extraordinary and compelling reasons exist if the prisoner is suffering from a condition that "requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(C). First, as for his alleged "brain trauma" from when he fell out of a tree as a child, *see* ECF No. 1775 at 3, nothing in the medical records suggests that this decades-old injury requires ongoing medical treatment. To the contrary, when Basham received a

CT exam of his head for unrelated reasons in 2024, the results were normal without clinical findings. *See* Exhibit 3 at 954. Second, as for Basham's ADHD and depression, the medical records show that he regularly has clinical encounters to assess his mental health and that he receives treatment. *See, e.g.*, *id.* at 6 (establishing a treatment plan for Basham's mental-health issues despite the possibility of malingering); *id.* at 32 (reflecting monthly assessments in early 2026); *see also* Exhibit 2 at 4 (noting that Basham "has maintained routine medical care by addressing medical issues during sick call and meeting scheduled medical call-outs"). In short, Basham's medical records confirm that he is being provided with ample medical care to manage his medical conditions. *Cf.* Exhibit 3 at 9 (reviewing Basham's conditions and noting they are stable).

Finally, extraordinary and compelling reasons exist if the prisoner is housed at a correctional facility affected by "an ongoing outbreak of infectious disease," from which the prisoner "is at increased risk of suffering severe medical complications or death" and "such risk cannot be adequately mitigated in a timely manner." § 1B1.13(b)(1)(D). Basham does not allege, much less offer evidence, that his medical conditions place him at increased risk of severe complications or death from an infectious disease. Or that his correctional facility is affected by "an ongoing outbreak of infectious disease." § 1B1.13(b)(1)(D).

In short, Basham "appears to have good physical condition and stable mental health." Exhibit 2 at 4. And he is receiving ample medical treatment for the conditions that he suffers from, which were already known to the Court at sentencing. Therefore, he does not have medical circumstances that qualify as extraordinary and compelling reasons.

**b. Basham has not established qualifying family circumstances.**

Section 1B1.13(b)(3) allows certain family circumstances to constitute extraordinary and compelling reasons. Yet Basham fails to allege any family circumstances that could qualify. In his motion, he claims he is the "last of immediate family" to care for his "elderly disabled" family. ECF No. 1765 at 6. Then, in a supplement to his motion, he argues that he must be sent home to care for his father, Jimmie Basham. ECF No. 1780 at 1; *see* Presentence Report ¶ 127. He also claims to have a "niece who has 3 kids" who needs him "to work and help support family" because she is in "financial difficulty." ECF No. 1780 at 1.

The "incapacitation of the defendant's parent" or "any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member" can establish extraordinary and compelling reasons when "the defendant would be the only available caregiver for the" person. § 1B1.13(b)(3)(C) & (D). But a prisoner bears the burden of establishing extraordinary and compelling reasons. *See Newton*, 996 F.3d at 488. And Basham fails to allege qualifying circumstances, much less support them with credible evidence.

First, he fails to establish that his relationship with his niece is an adequate relationship. She isn't an "immediate family member." *See* § 1B1.13(b)(3)(D) (defining "immediate family member"). And he doesn't offer any details about his relationship with her to establish their relationship "is similar in kind to that of an immediate family member." *Id.*

Second, he fails to establish that his father or niece is incapacitated. His father is elderly; he is likely in his 80s. *See* Presentence Report ¶ 127 (describing the father as "in his 60s" in 2005). But that doesn't mean he's incapacitated. Incapacitation requires that a person be "incapable of . . . normal functioning." *See Incapacitated*, Merriam-Webster (online ed.). And a prisoner must establish a family member's incapacitation with credible evidence, such as "medical records or a medical note from a treating physician." *See, e.g.*, *United States v. Romano*, 2023 WL 8735203, at *3 (E.D.N.Y. Dec. 19, 2023). Yet Basham doesn't provide any such evidence. Likewise, Basham includes zero evidence or allegations that his niece is incapable of normal functioning.

Third, even if Basham's father or niece is incapacitated, Basham fails to establish that he's the "only available caregiver." *See* § 1B1.13(b)(3)(C). Basham claims that he is the "last of immediate family." ECF No. 1765 at 6. But prisoners must present "credible evidence as to the lack of alternative caregivers." *See, e.g.*, *United States v. Hill*, 2020 WL 3037226, at *3 (W.D. Ark. Jun. 5, 2020). And Basham fails to support his claim. To the contrary, the evidence suggests there is at least one other available caregiver: Basham's sister, who is presumably the daughter of Basham's father and the mother of his niece.[4] *See* Presentence Report ¶ 127. So Basham has failed to establish that he's the "only available caregiver." *See* § 1B1.13(b)(3)(C).

In short, Basham fails to establish that his father or niece is incapacitated or that he is the only available caregiver. And Basham fails to allege any other family circumstances

[4] Further, if only one person between the father and niece is incapacitated, then the functioning family member is available to care for the other.

that could qualify as extraordinary and compelling reasons. His only other argument is that he needs to be home so that he can work to help support his family. *See* ECF No. 1780 at 1. Yet this doesn't satisfy any category of family circumstances listed in § 1B1.13(b)(3). And it would be an inappropriate ground to grant compassionate release anyway: "[F]inancial hardship on [a prisoner's] family is not extraordinary and compelling, but rather a common consequence of incarceration." *Benton v. United States*, No. 2:21-CR-33(1), 2023 WL 7027957, at *6 (E.D. Va. Oct. 25, 2023).

**c. Basham has not "established" that he has been abused.**

Section 1B1.13(b)(4) provides that "extraordinary and compelling reasons" exist when a prisoner is the victim of abuse at the hands of BOP staff while he is "serving the term of imprisonment sought to be reduced." § 1B1.13(b)(4). The abuse must be "sexual abuse involving a 'sexual act'" or "physical abuse resulting in 'serious bodily injury.'" *Id.* And it isn't enough for the prisoner to merely allege abuse. Instead, § 1B1.13(b)(4) imposes an exhaustion-like requirement: The abuse "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." § 1B1.13(b)(4).

Basham argues that he qualifies. He claims that he was "sexually abused by [a] doctor" and "physically abused by [an] officer and threatened by [an] officer to plead guilty." ECF No. 1765 at 5. Yet Basham's bare-bones allegations are insufficient to carry his "burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *Newton*, 996 F.3d at 488. He offers zero evidence that the alleged abuse occurred at all, much less that the abuse has been "established" by "a conviction in a

criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." *Id.* To the contrary, his medical records don't reflect injuries consistent with sexual or physical abuse. And the government is not otherwise aware of any evidence that would support his claims.

**d. Basham fails to cite "other reasons."**

In addition to the specifically enumerated circumstances that can create extraordinary and compelling reasons, § 1B1.13(b) has a catch-all provision. The catch-all provision allows "other reasons" to create extraordinary and compelling reasons. § 1B1.13(b)(5). But only where the other reasons are "similar in gravity" to the circumstances listed in § 1B1.13(b)(1) to (4).

Basham claims there are "other reasons" to reduce his sentence. ECF No. 1765 at 5. But he fails to allege any. Instead, every reason cited in his motion fits under the specifically enumerated circumstances in § 1B1.13(b). And given that the Sentencing Commission has articulated criteria for those circumstances to qualify as extraordinary and compelling reasons, it would be inappropriate to allow a prisoner to use § 1B1.13(b)(5) as a backdoor to establish extraordinary and compelling reasons for circumstances that fail to meet those criteria. *Cf. Aikens v. Ingram*, 652 F.3d 496, 500 (4th Cir. 2011) (holding that the catch-all provision in Federal Rule of Civil Procedure 60(b) could not be invoked when the claimed reason would otherwise "fall within the list of enumerated reasons"). Plus, even if such circumstances could qualify as "other reasons," Basham fails to establish any reason that is "similar in gravity" to the circumstances listed in § 1B1.13(b)(1) to (4).

**e. Basham fails to cite any relevant change in the law.**

Section 1B1.13(b)(6), to the extent it is valid, allows a court to reduce a sentence when the prisoner (1) "received an unusually long sentence" and (2) "has served at least 10 years" of that sentence, and (3) "a change in the law" has produced "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." § 1B1.13(b)(6); *but see Rutherford v. United States*, 146 S. Ct. 1320, 1335 (2026) (holding that § 1B1.13(b)(6) is invalid to the extent it purports to allow Congress's nonretroactive changes to the law to constitute extraordinary and compelling reasons).

Basham's change-in-law arguments are difficult to parse. He argues that "[i]t was made in[ ] bill of constitution unconstitutional to stack gun charges and it is Double Jeopardy to charge multiple same charges only using different codes to put under." ECF No. 1765 at 6; *see* ECF No. 1775 at 1 (arguing that there was a "constitution change" so a defendant is "allowed 1 gun charge now" yet he "was charged with many gun charges"); *see also* ECF No. 1780 at 2. This argument fails to establish extraordinary and compelling reasons for several reasons. But the argument fails most obviously because (1) it is a challenge to his convictions, which is not permissible in a compassionate-release motion, (2) his convictions do not violate the Double Jeopardy Clause, and (3) he didn't receive an "unusually long sentence."

First, Basham's argument is at bottom a challenge to his conviction. Yet "the compassionate release provision is not a vehicle for attacking the validity of a conviction." *Fernandez*, 146 S. Ct. at 1307. Instead, the argument should be raised, if at all, in a petition for a writ of habeas corpus. And Basham can't use § 3582(c)(1)(A) as an end-run around

habeas corpus's procedural requirements. *See United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022) (noting that "28 U.S.C. § 2255 is the exclusive remedy for challenging a federal conviction or sentence after the conclusion of the period for direct appeal" (cleaned up)).

Second, Basham's argument—to the extent it can be understood—lacks merit. He may be referencing *Barrett v. United States*. 607 U.S. 128 (2026). There, the Supreme Court held that Congress did "not authorize[ ] convictions under both 18 U.S.C. § 924(c)(1)(A)(i) and (j) for one act that violates both provisions." *Id.* at 149. Yet Basham was not convicted of § 924(j). *See Basham*, 561 F.3d at 314. So *Barrett* makes no difference to Basham's convictions. And his convictions don't otherwise violate the Double Jeopardy clause.

The reference to "stacking" could also be an argument about a change to § 924(c)'s sentencing regime. When Basham was sentenced, a consecutive 300-month sentence on a second § 924(c) conviction was mandated by the statute in a practice called "stacking." *See* § 924(c)(1)(C) (2005); *see also Deal v. United States*, 508 U.S. 129, 132 (1993). In 2018, however, the First Step Act amended § 924(c) to nix "stacking" on the defendant's second § 924(c) conviction when it was obtained in the same prosecution as the first § 924(c) conviction. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222 (2018); *see also United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020) (noting that the 300-month mandatory sentence "no longer applies to multiple § 924(c) convictions obtained in a single prosecution"). Yet Basham received only one § 924(c) conviction. *See Basham*, 561 F.3d at 314. So that too makes no difference for Basham.

Third, a life sentence is not an "unusually long sentence" for Basham's crimes: carjacking, kidnapping, raping, and killing a forty-four-year-old mother and grandmother. And that isn't to mention other crimes he committed during his criminal spree: carjacking a man at knifepoint, raping and killing a nineteen-year-old girl, attempting to carjack another victim by pointing a gun at her fifteen-year-old daughter, and shooting at a law-enforcement officer during a police chase. To the extent Basham's sentence might be considered too "long," it is only because the sentence spares him from the punishment imposed by a jury of his peers.

In short, to the extent § 1B1.13(b)(6) is valid, Basham doesn't present extraordinary and compelling reasons to reduce his sentence under it. His arguments are improper challenges to his convictions. *Fernandez*, 146 S. Ct. at 1307. And they also lack merit. Accordingly, there are no extraordinary and compelling reasons under § 1B1.13(b)(6).

## III. Even assuming that there are "extraordinary and compelling reasons," the Court should deny the motion.

### a. The § 3553(a) factors heavily weigh against a sentence reduction.

When a prisoner is eligible, reducing his sentence under § 3582(c)(1)(A) is discretionary. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021). In exercising this discretion, however, a court must consider the § 3553(a) factors. *See* § 3582(c)(1)(A); *see also High*, 720 F.3d at 195. Here, the § 3553(a) factors heavily weigh against a sentence reduction.

Basham's history and characteristics weigh against a sentence reduction. He is an extremely violent criminal. By his early 20s, even before the criminal rampage that

resulted in the instant convictions, he had already collected a lengthy criminal history. Among other convictions, had had convictions for terroristic threatening when he "threatened to kill his teacher," assault when he "bit the victim three times," thefts, and burglary. Presentence Report ¶¶ 103–117. He committed the instant offenses after escaping a Kentucky jail where he was serving a sentence for possession of a forged document. Presentence Report ¶ 16.

The nature and circumstances of the offense also weigh against a sentence reduction. Basham went on a "brutal" and "heinous" "criminal rampage." *Fulks*, 120 F.4th at 150, 151. With his co-defendant, he carjacked, raped, and killed two women; he carjacked a man at knifepoint; he attempted to carjack another woman by holding her daughter at gunpoint; and he fired shots at a police officer in an attempt to evade capture so that the rampage could continue. Decades later, there still isn't full closure for the victims: Although Donovan's "remains were found years after this ordeal," *Fulks*, 120 F.4th at 151, Burns's have never been found.[5] And one of her last personal effects—a heart-shaped ring—was pilfered by Basham for a keepsake after he raped her and "set fire to her car." *Fulks*, 120 F.4th at 150. This is depraved. The nature and circumstances of the offense could not weigh more heavily against a sentence reduction.

---

[5] For the reasons discussed, the government strongly opposes any reduction in Basham's sentence. But should the Court determine it is appropriate to reduce Basham's sentence, the government respectfully requests that, before granting the motion, the Court "ensure that any victim of the offense is reasonably, accurately, and timely notified, and provided, to the extent practicable, with an opportunity to be reasonably heard, unless any such victim previously requested not to be notified." § 1B1.13 cmt. n.2.

In addition to the § 3553(a) factors, a court may also consider the prisoner's post-sentencing conduct. *See High*, 997 F.3d at 190. Basham's post-sentencing conduct heavily weighs against a sentence reduction. He has accrued a significant prison disciplinary record. *See* Exhibit 1; *see also* Exhibit 2 (noting Basham "has been sanctioned for acts of High and Greatest severity on multiple occasions over the last 20 years"). His 58 prison disciplinary infractions include: engaging in sexual acts four times, indecent exposure three times, refusing to obey an order eight times, being insolent to staff five times, assaulting without serious injury four times, destroying property three times, possessing a dangerous weapon, use of drugs or alcohol twice, being unsanitary or untidy, misusing authorized medication three times, possessing drugs or alcohol twice, refusing a drug or alcohol test three times, possessing an unauthorized item twice, threatening bodily harm seven times, interfering with a secrecy device twice, possessing intoxicants twice, fighting with another person, phone abuse by disrupting monitoring, using mail without authorization, and tattooing or self-mutilating twice. *See* Exhibit 1 at 1–12.

These are serious infractions. In particular, the government flags Basham's relatively recent infractions for (1) assaulting without serious injury on January 6, 2025, when he attempted to elbow a staff member and (2) possessing a dangerous weapon on August 30, 2020, when he hid a knife under his mattress. *See id.* at 1 & 2. He "continues to engage in activity that threatens the security and safety of [BOP] staff as well as other inmates." Exhibit 2 at 2. Basham's prison disciplinary record thus suggests that he is not rehabilitated and remains a danger to society. *Cf. id.* (describing Basham as "a High

recidivism risk"). So Basham's post-sentencing conduct heavily weighs against a sentence reduction.

**b. Separation-of-powers principles caution against reducing Basham's sentence.**

A jury decided that Basham "shall be sentenced to death." ECF No. 805 at 11. The sentence was affirmed on appeal. *See Basham*, 561 F.3d at 309. Before Basham was executed, however, President Biden commuted the sentence to "life imprisonment without the possibility of parole." ECF No. 1760. Basham now asks the Court to upset his presidentially commuted sentence. Yet separation-of-powers principles caution against a judicial modification of a presidentially commuted sentence.

The Fourth Circuit has held that a court "*cannot* disturb a 'presidentially commuted sentence' even if only by further reducing the sentence." *United States v. Wright*, 163 F.4th 469, 473 (8th Cir. 2025) (quoting *Blount v. Clarke*, 890 F.3d 456, 462 (4th Cir. 2018)) (emphasis added). In *United States v. Surratt*, President Obama commuted a prisoner's life sentence to a term of 200 months' imprisonment while the prisoner's habeas corpus appeal was pending. *See* 855 F.3d 218, 224 (4th Cir. 2017) (en banc) (Wynn, J., dissenting from dismissal). The Fourth Circuit, in a short en banc opinion, held that the presidential commutation rendered the appeal moot. *Id.* at 219. Judge Wilkinson explained that the "President's commutation order simply closes the judicial door" because the judicial branch "may not readjust or rescind what the President, in the exercise of his pardon power, has done." *Id.* at 219–220 (Wilkinson, J., concurring) ("We are simply without power to

inject ourselves into the lawful act of a coordinate branch of government . . . and supersede a presidential pardon or commutation with a contravening order of our own.").

*Surratt's* conclusion was reaffirmed in *Blount*. *See* 890 F.3d at 462–63. There, a state prisoner applied for a writ of habeas corpus from his Virginia sentence. "While the application was pending, however, Virginia Governor Robert McDonnell issued Blount a partial pardon." *Id.* at 457. The Fourth Circuit, applying *Surratt*, held that the partial pardon "rendered Blount's habeas application moot and that the court was therefore without jurisdiction to address it." *Id.* at 463.

The Fourth Circuit has not extended *Surratt*'s conclusion from the habeas corpus context to the compassionate-release context. And the Eighth Circuit, meanwhile, has held that courts retain the authority to grant compassionate release from a presidentially commuted sentence. *See Wright*, 163 F.4th at 473–74 (holding that "President Biden's commutation did not moot" the prisoner's § 3582(c)(1)(A) motion). But even assuming that the Court is authorized to reduce Basham's sentence, separation-of-powers principles caution against the judicial modification of his presidentially commuted sentence.

The Constitution vests the president with the "Power to grant Reprieves and Pardons for Offences against the United States." U.S. Const. art. II, § 2. And President Biden exercised this constitutionally vested authority to commute Basham's death sentence to "life imprisonment without the possibility of parole." ECF No. 1760. The Court should "not readjust or rescind what the President, in the exercise of his pardon power, has done" by further reducing the sentence. *Surratt*, 855 F.3d at 219–220 (Wilkinson, J., concurring).

## CONCLUSION

The Court should deny Basham's motion for compassionate release.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: *s/ Michael G. Shedd*
Michael G. Shedd (#13314)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29205
Michael.Shedd@usdoj.gov
(803) 929-3000

October 9, 2026

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **BRANDON LEON BASHAM** | ) | NO. 4:02-cr-00992-JFA |
| | ) | |
| | ) | |

As an attorney of record, on October 9, 2026, I caused to be served one true and correct copy of the attached **Government's Response in Opposition to Motion for Compassionate Release** via the court's e-noticing system, but if that means failed, then by regular mail, on:

BRANDON LEON BASHAM
REGISTER NUMBER: 98940-071
USP TERRE HAUTE
P.O. BOX 33
TERRE HAUTE, IN 47808

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

By: *s/ Michael G. Shedd*
Michael G. Shedd (#13314)
Assistant United States Attorney